**UNITED STATES of America, Plaintiff,**

v.

**George William CROCKER, Defendant.**

**No. 3–68 Cr. 51.**

United States District Court
D. Minnesota,
Third Division.

Jan. 17, 1969.

---

Patrick J. Foley, U. S. Atty., by William E. Falvey, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Peter J. Lindberg, Minneapolis, Minn., for defendant.

Chester A. Bruvold and John R. Graham, Minneapolis, Minn., amicus curiae.

NEVILLE, District Judge.

Defendant, 20 years of age, was indicted for failure to perform a duty required of him under the Universal Military Training and Service Act and the rules, regulations and directions made pursuant thereto, in that he failed and neglected to comply with an order of his Local Board to report for and submit to induction into the Armed Forces of the United States, in violation of Title 50, Appendix, United States Code, Section 462. The case was tried before a jury at St. Paul, Minnesota on November 27, 1968. The jury returned a guilty verdict. Defendant's own testimony was to the effect that he had indicated on his original classification questionnaire that he wished to be considered a conscientious objector; that on receiving from his Local Board what is known as Form #150, a form designed to provide detail as to the basis for a conscientious objector's belief, defendant discussed it with several people and concluded not to complete it and sent it back to his Board blank; that in his opinion anything relating to the Selective Service Act is wrong and symbolizes a totalitarian state. There was other evidence that later communications from the Local Draft Board to defendant went unanswered and in one or more instances such were returned unopened. Defendant was subsequently classified 1A. He took no appeal from this classification as permitted by law and, the rules and regulations of the Selective Service Law.

There is no question in the court's mind but that the jury was warranted in finding defendant's failure to obey the order of his Local Draft Board knowing and willful.

■ Defendant and the lawyers appearing amicus curiae contend that the Universal Military Training and Service Act is unconstitutional during peace time in that it creates an involuntary servitude within the meaning of the prohibition of the Thirteenth Amendment to the United States Constitution, and is in excess of the powers conferred on the Federal Government by Article I, Section 8 of the Constitution. Counsel have submitted briefs expending on both of these contentions. For the reasons stated below, this court is not convinced that the power of Congress to provide for the common defense is as limited as counsel urge. This court must consider the United States Constitution itself and the appellate court decisions interpreting its provisions. Arguments attempting to show the lack of wisdom of the Vietnam War or of the draft system are not rightly directed to the court, but rather are political questions belonging in the halls of Congress. See United States v. Sisson, 294 F.Supp. 511 (D.C.Mass. Nov. 25, 1968).

■■ Defendant claims that all cases heretofore decided have erroneously sustained the constitutionality of the draft in reliance on the Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918) and that that case patently was wrongly decided. Defendant does not attempt to distinguish that case except to say that it involved war time conscription, whereas the present law was not passed during a formally declared state of war. The court does not believe that the Selective Draft Cases can be distinguished on the ground urged and since it is a decision of the highest court of the land, it must be followed by this court unless and until overruled. See also United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Lichter v. United States, 334 U.S. 742, 756 n.4, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948).

Both the defendant and amicus curiae argue that at the time of the adoption of the Constitution an "army" was a professional voluntary non-conscript force and that both those favoring a strong central government and those favoring greater power for the states were in agreement that conscription was undesirable. Hence, they argue, the Constitution must be read to prohibit a national conscript army. As a further basis it is argued that state militias were conscript citizen armies and that hence only by following those clauses of Article I, Section 8 of the Constitution which deal with militia and their federal service can a conscript army be raised.

The only case cited by defendant in support of this view is Kneedler v. Lane, 45 Pa. 238 (1863) wherein was challenged the constitutionality of the 1863 conscription Act. Not only was the Act eventually unheld by that state court, but the case is superseded as far as this court is concerned by the Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918). For a complete discussion of the *Kneedler* case, and the contentions advanced in the case at bar, see the excellent and exhaustive memorandum by Senior District Judge John Delehant in United States v. Richmond, 274 F.Supp. 43, 66–75 (C.D.Cal.1967). Compare Bernstein, Conscription and the Constitution: The Amazing Case of Kneedler v. Lane, 53 A.B.A.J. 708 (1967). A multitude of other cases have likewise sustained Congressional power to conscript whether or not a state of war had been formally declared by Congress. See e. g., United States v. O'Brien, supra; United States v. Hogans, 369 F.2d 359 (2nd Cir. 1966); Howze v. United States, 272 F.2d 146, 148 (9th Cir. 1959).

■ Defendant's second claim that a peacetime draft law violates the Thirteenth Amendment to the Constitution which prohibits involuntary servitude also has continually been rejected by the courts. Even before the Selective Draft Law Cases, the Supreme Court had said:

" * * * he may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests or even his religious or political convictions, to take his place in the ranks of the army of his country and risk the chance of being shot down in its defense." Jacobson v. Com. of Massachusetts, 197 U.S. 11, 29, 25 S.Ct. 358, 362, 49 L.Ed. 643 (1905).

Conceding the unanimous judicial rejection of this argument, defendant claims that none of the courts so ruling have correctly applied the Amendment. This court is not the proper forum in which to overrule the Supreme Court and the various Courts of Appeal that have considered the issue.

Whatever the logic of defendant's arguments of whatever ultimate different position, if any, the United States Supreme Court might some time take, if the validity of the draft "in time of peace" is still an open question—see dissent of Justice Douglas in Holmes v. United States, 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968)—this court deems itself bound by the current decisions of the Court of Appeals of its own Eighth Circuit. The most recent case, Ashton v. United States, 404 F.2d 95 (8th Cir. Dec. 3, 1968) met defendant's contention squarely in these words:

"Ashton first attacks the overall constitutionality of the draft laws and the alleged illegal use of draftees because there exists no emergency or declaration of war. *Such attack merits little discussion.* This argument has been consistently rejected. Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918); United States v. Hogans, 369 F.2d 359 (2 Cir. 1966); United States v. Bolton, 192 F.2d 805 (2 Cir. 1951) (per curiam); United States v. Henderson, 180 F.2d 711 (7 Cir. 1950); United States v. Herling, 120 F.2d 236 (2 Cir. 1951).

The United States Supreme Court in United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), recently observed in the draft card burning case:

'The constitutional power of Congress to raise and support armies

and to make all laws necessary and proper to that end is broad and sweeping. Lichter v. United States, 334 U.S. 742, 755–758, [68 S.Ct. 1294, 92 L.Ed. 1694] (1948); Selective Draft Law Cases, 245 U.S. 366 [38 S.Ct. 159, 62 L.Ed. 349] (1918); see also Ex Parte Quirin, 317 U.S. 1, 25–26, [63 S.Ct. 2, 87 L.Ed. 3] (1942). *The power of Congress to classify and conscript manpower for military* service is "beyond question".' " [Emphasis added]

See also Vaughn v. United States, 404 F.2d 586 (8th Cir. Dec. 4, 1968) where the court summarily disposed of the argument that the Selective Service Act is unconstitutional.

A separate order has been entered denying defendant's motion for acquittal, or for arrest of judgment, or alternatively for a new trial.